## Case No. 6,102.

### The HARRIET NEWHALL.

[3 Ware, 105.] [1]

District Court, D. Massachusetts. Sept., 1856.

COLLISION — MEASURE OF DAMAGES FOR LOSS OF CARGO.

1. The nature and measure of damages considered. When intentional and when not.

[2. In cases of loss of cargo by collision the damages are limited to the actual loss, without any allowance for expected profits; hence the basis of the computation is not the value of the cargo at the port of destination, but its prime cost, together with all charges, premiums for insurance, etc. Following The Amiable Nancy, 3 Wheat. (16 U. S.) 546.]

In admiralty.

Shepley & Dana, for libellants.
Howard & Strout, for respondent.

WARE, District Judge. The value put on the vessel on the evidence reported, I think is reasonable, and is confirmed at $1,500. The damage in the loss of the cargo, is presented in the report in a double aspect. First, the original cost, including the ship's stores and furniture is found to be $557.32. Secondly, the value of the same at Boston, her port of destination, provided she arrived in safety, is found to be $1,861.72. Which of these is the true measure of damage in a loss by collision? Damage may be done and a right to indemnity arise under two different conditions. First, under a contract, which a party has failed to perform, and the plaintiff seeks damages for the non-performance. The French law has an appropriate name for these, which are called dommage et enterests; and they include the actual loss sustained and the profits which the party has failed to gain. For in every contract, a profit is expected and constitutes the motive of the contract. If one party is disappointed in this expectation, by the failure of the other to fulfil his engagements, he has a right, according to the circumstances of the case, to demand a sum which will indemnify him for the actual loss and the profits, which have been defeated. See, an example, in Domat, Civ. Law, pt. 1. lib. 3. tit. 5, § 2, No. 4, which is amplified by 6 Toullier, No. 286. The second condition is when the damage is caused by a tort. And this may be presented under a twofold aspect. The first, is when the tort is unintentional, occasioned by a fault indeed, but such a fault as may happen to a prudent and careful man from sudden surprise, by which the mind is thrown off its balance. or from momentary inattention or forgetfulness, to which the most cautious men are liable; faults

*Quas in curia fudit*
*Aut humana parum cavit natura.*

Such delinquencies are looked upon with indulgence, and in these the proper measure of

damages, it may be assumed with a considerable appearance of reason, is the actual loss sustained, without augmenting it by the profits which the party might have made. The second aspect is when the tort is wilful and malicious; and here the court may and ought, according to circumstances, to enhance the indemnity by adding to the actual loss the expected profits. And the examples referred to above show that this may be done in the case of a wilful breach of contract. In some cases, as in slander, libel, seduction, torts to the person accompanied with contumely and intended to disgrace a man, it has been thought that courts may go beyond a simple reparation of the wrong to the individual, and award damages in poenam. 2 Greenl. Ev. § 253, and note, where the question is fully argued pro et contra. Collision almost invariably belongs to the first class. We never suppose it to be intentional and malicious, and it would seem that the proper measure of damage is the actual loss sustained. 2 Pars. Cont. 459, and the cases in the notes. In the case of The Anna Maria, 2 Wheat. [15 U. S.] 327, which was a wrongful capture by a privateer, the conduct of the captors is described as "a wanton marine trespass for which no sufficient excuse was given. The breaking open of trunks, when keys were offered them, and taking out the crew and putting them in irons and leaving the vessel in this situation, were acts not to be excused." And the ultimate loss of the vessel is represented as resulting from the illegal violence and misconduct of the captors. As the loss, in this case, was the consequence of a wanton and malicious tort, it would hardly have been considered as a harsh judgment, if the court had added to the actual loss, the reasonable profit that might have been expected from the sale of the cargo at the port of destination. Neque malitiis indulgendum est. Dig. 6, 1–38. A wilful trespasser has no reason for complaint. if he is required to put the injured party in as good a condition in every respect as he would have been in, but for the wrong done; yet the court, in this case, held that the true measure of damages was "the value of the vessel and the prime cost of the cargo, with all charges and the premium of insurances where it has been paid with interest." Nothing was allowed for expected profits. A claim of expected profits was presented in a subsequent case,—The Amiable Nancy, 3 Wheat. [16 U. S.] 546,—and was rejected, first on account of the uncertainty of the rule in its application, and secondly, the difficulty of supporting its legal correctness. Though the courts say, that if the suit had been against the original wrong doers, it might have been proper to visit upon them exemplary damages, as a proper punishment for their lawless violence. These decisions establish a rule of damages in cases of marine tort, not only on the highest authority and that bind-

[1] [Reported by George F. Emery, Esq.]

ing on this court, but one that appears to be reasonable when the tort is not malicious. When it is, the latter case comes very near to an authority for going beyond that, nor do I see any impropriety nor any violation of sound judicial principle, in adding the profits of the sale at the port of destination. The difficulty of determining precisely what they might have been, does not appear to me to be an insuperable objection to the allowance of a fair mercantile profit. The Francis was lost by the collision on her return from Newfoundland, where she had been for a cargo of fish. I do not understand that she earned freight on her outward voyage. The fish were taken in fresh and salted by the crew with salt taken out for that purpose. The prime cost of the fish must be considered as what was paid for them in Newfoundland, and of the salt, the price paid in Boston. To this must be added a reasonable charter of the vessel from the time she left Boston to that of the disaster, with wages and subsistence of the master and crew, with the premium of insurance, if any was paid, and if not a fair premium for the voyage.

NOTE. How far courts and juries are, in cases of malicious torts, authorized to award penal damages, is a question perhaps not perfectly settled in the jurisprudence of the common law. The question has been learnedly and acutely examined by Mr. Sedgwick of the New York bar, in a treatise on the Law of Damages, and by Mr. Greenleaf, in the second volume of his excellent treatise on Evidence, No. 253, note. Mr. Sedgwick holds, on the authority of decided cases, that the jury may legally give punitory damages by way of example. Mr. Greenleaf, that only compensatory damages can be given. It is certain that the language often used by the courts, not only in charges to the jury, but in opinions deliberately given on questions of law, goes very far to justify the doctrine maintained by Mr. Sedgwick. Exemplary, vindictive, and punitory damages, and most money damages in poenam; in their fair and common meaning, imply something more than a bare and naked compensation to the complainant. Mr. Greenleaf, by a careful analysis of the cases, has endeavored to show that this language may be satisfied if it is restricted to mere compensatory damages, a simple restitutio in integrum of the injured person, and in some of them he has perhaps successfully shown it; but in others this seems to be doing some violence to the ordinary and natural meaning of the words. Whether all the cases will admit of this construction or not, where the question is reduced to its elements and examined on principle, it seems to be quite clear in theory that Mr. Greenleaf maintains the true principle. Every private wrong that involves a violation of public order, includes two kinds of injury perfectly distinct in their nature: the private damages sustained by the injured individual and the public injury by the example of violation of public order, and the license and encouragement which would be given to the lawless and violent if it were not repressed by due punishment. The individual is to be indemnified by a private action in his own name, the public by their own action and by a penalty proper in its nature and extent to protect the public from the influence of such examples. But there is no reason why the indemnity due to the public for the wrong done to them, should be transferred as a gratuity to the individual through whom they have suffered.